MARY J. VAUGHAN, The, and·The TELE-
    GRAPH (GORDON v.). See Case No. 5,-
    617.

MARY, The KATHLEEN. See Case No. 7,-
    625.

# Case No. 9,218.

## The MARYLAND.

### GEIGER v. The MARYLAND.

[4 Adm. Rec. 358.]

District Court, S. D. Florida. Dec. 26, 1849.

SALVAGE — AMOUNT OF PERIL — BAD WEATHER—
COSTS—UNNECESSARY LIBEL.

[1. Eight vessels with one hundred and twenty men were engaged in bad and boisterous weather in saving cargo·and materials of a ship lost on Alabainian Reef, under circumstances of some peril to the lives and property of the salvors, and succeeded in saving cargo valued at $50,227. *Held*, that the salvors were entitled to $18,468, less 36 per cent. of expenses, etc., as compensation.]

[Cited in Baker v. The Slobodna, 35 Fed.▲542.]

[2. The vessels engaged in the service before the weather became bad were allowed 25 per cent. on the value of the property saved by them, as they would also share in the salvage upon all the property; the others were allowed 40 per cent. to 50 per cent. on property saved by them.]

[3. Two libels having been unnecessarily filed the increased costs thereby caused should be borne by the libelants in the second libel.]

[This was a libel by Packer Geiger and others against the cargo and materials of the ship Maryland for salvage services.]

A. Gordon, for libellants.
S. R. Mallory, for respondent.

MARVIN, District Judge. The ship Maryland, bound on a voyage from Baltimore to New Orleans, laden with a cargo of coffee and dry-goods, got ashore upon a reef known as the "Alabainian Reef," about fifteen miles to the eastward of this place. The master, in the hopes of forcing the ship over the reef by lightening her, commenced very promptly to heave overboard cargo, but very soon discovered that the tide was falling, he ceased this operation. The wrecking sloops Mystic, Lizzy Wall, George Eldridge and Eliza, arrived at the ship soon after she had struck the reef; and their respective masters offered their assistance. The master, becoming satisfied that the ship must be lightened in order to get her off, accepted their assistance. During the night and the next morning the wreckers loaded the schooner Lizzy Wall and sloop Mystic. The wind increased, and during the next day blew violently in squalls, causing a heavy sea. The salvors succeeded in loading the George Eldridge in part, but before night many of the wrecking vessels were obliged by the violence of the wind to leave the ship and make a harbor. The schooners Champion, St. Dennis and Lafayette arrived at the ship during the night of her first being ashore. Their assistance was accepted. but as the wind had increased in violence, they were, at this stage of the business, of but little service. The ship beginning to leak, and she still being hard aground, her main and mizzen masts were cut away to ease her. In the bad weather which succeeded, notwithstanding the efforts of the salvors to keep the ship free, she finally filled with water, destroying more than half of her cargo. The ship became a total loss.

The value of the cargo and materials saved from the ship is $50,227. Eight vessels with their crews, amounting in the aggregate to about one hundred and twenty men, were employed in saving this property. The service was rendered in very bad and boisterous weather, and under circumstances of some peril and danger to the lives and property of the salvors. Under ·these circumstances they are entitled to a fair and reasonable compensation for their services.

I have examined the cases of the Jean Key [unreported]; The Cora ·Nelly [Case No. 3,-217]; The Yucatan [Id. 18,194]; and the New England [Id. 10,151]; and several others heretofore decided in this court; and comparing this case with those, I think the whole salvage in the present case should be $18,468, less 36 per cent. of the wharfage, storage bills for labor, &c. It is difficult to distinguish this case from that of The New England [supra] in any other particular than that a larger amount of property was saved in the case of the New England. In that case the cargo and materials saved amounted to a little over $80,000, the number of salvors was about

the same as in the present case, and the weather was equally bad. The total salvage allowed in that case was $20,807. The amount of property saved in that case was greater than in this. Consequently the rate per cent. of the salvage was less than it is in the present.

In decreeing the salvage in this case a difference in the rate per cent. should be made as between the different wrecking vessels. Upon the amount saved by the Mystic, Lizzy Wall, George Eldridge and Eliza, constituting the first consort, and which was saved before the other vessels came to their assistance, I think twenty-five per cent. should be allowed. This first consort saved $13,690. This was saved before the weather had become so bad as to make it dangerous to lie near the wreck. A less rate of salvage would therefore be a sufficient compensation. But in addition to this consideration, these vessels will draw their share of salvage upon all the property subsequently saved by other vessels. whereas, the latter vessels are excluded from any participation in the salvage earned by them. The second consortship, which includes the first named vessels with the others, saved $33,635. To this consortship I think forty per cent. should be allowed, deducting, however, a proportional share of the wharfage, storage, bills for labor, &c. To the Lavinia, Champlain and the other vessels saving small amounts, fifty per cent. will be allowed. Two libels have been filed by the wreckers in this case, giving rise to two answers, and increasing the costs in the case. One libel was sufficient in the case. There was no conflict of interest, and one libel could be made to present the claims and secure the interests of all the principal salvors. The increased costs must, therefore, be paid by the libellants, and I think they should be paid by the party of libellants filing the second libel.

It is therefore ordered, adjudged and decreed that the libellants have, recover and receive in full compensation for their services rendered in saving the cargo and materials of the wrecked ship Maryland as follows, to wit: That the masters, owners and crews of the sloop Mystic, the schooner Lizzy Wall, the sloops George Eldridge and Eliza recover and receive three thousand five hundred and sixty-three dollars, being twenty-five per cent. upon the value of the property saved by them, deducting, however, from their salvage their proper proportion of the costs and expenses of this suit, and of the wharfage, storage and bills for labor in landing and storing the cargo. That there be allowed to the masters, owners and crews of the vessels constituting the second consortship, to wit, the Mystic, the Champion, the St. Dennis, Lafayette, Eliza, Lizzy Wall, and George Eldridge, thirteen thousand and four hundred and fifty-four dollars, being forty per cent. upon the value of the property saved by them, however deducting from the salvage their proper proportion of the costs and expenses of this

suit, the wharfage, storage and bills for labor in landing and storing the property. That there be allowed to the Lavinia, Champlain, and to the several smaller boats fifty per cent. of the amount saved by them, such amounts being small and saved with much difficulty and labor. That the increased costs and expenses growing out of the filing of the second libel, or the one filed by Geiger and others, be charged to the libellants in that libel. That the residue of the costs and expenses and of the wharfage, storage and bills for labor be charged to the cargo and materials saved. That upon the payment of the aforesaid salvage, wharfage, storage, and bills for labor be charged to the cargo and materials saved. That upon the payment of the aforesaid salvage, wharfage, storage and bills for labor, the marshal restore said cargo and materials to the master of the wrecked ship Maryland, for and on account of whom it may concern.